UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JENICE L.,<br><br>    Plaintiff,<br><br> v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. C19-6243-MLP<br><br>ORDER |

## I. INTRODUCTION

Plaintiff seeks review of the denial of her application for Supplemental Security Income. Plaintiff contends the administrative law judge ("ALJ") erred by discounting her subjective allegations, and in assessing the medical opinion evidence.[1] (Dkt. # 10 at 1.) As discussed below, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## II. BACKGROUND

Plaintiff was born in 1961, and has a tenth-grade education and a GED. AR at 67-68.

---

[1] In the conclusion paragraph of her opening and reply briefs, Plaintiff raises a challenge to the ALJ's step-four findings. (Dkt. # 10 at 15; dkt. # 12 at 7.) This assignment of error was not listed on the first page of the opening brief, nor was it developed beyond one sentence in these conclusion paragraphs. Because this case is remanded on other grounds, and because it was insufficiently briefed here, the Court will not address this argument further; Plaintiff may address this issue on remand.

ORDER - 1

Plaintiff was last gainfully employed in 2008 as a hotel maid, and previously worked as a food taster and temporary laborer. *Id.* at 70, 351-54.

In January 2016, Plaintiff applied for benefits, alleging disability as of October 9, 2010.[2] AR at 303-08. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 196-204, 213-19, 221-22. After the ALJ conducted a hearing in July 2018 (*id.* at 61-98), the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 16-29.

Utilizing the five-step disability evaluation process,[3] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since the amended alleged onset date.

Step two: Plaintiff has the following severe impairments: migraine headaches, chronic obstructive pulmonary disease ("COPD"), shoulder abnormalities, major depressive disorder, and post-traumatic stress disorder.

Step three: These impairments do not meet or equal the requirements of a listed impairment.[4]

Residual Functional Capacity: Plaintiff can perform medium work (can lift/carry 50 pounds occasionally and 25 pounds frequently, and can stand and/or walk for six hours in an eight-hour workday) with additional limitations: she can frequently balance, stop, kneel crouch, crawl, and climb. She cannot have concentrated exposure to pulmonary irritants or hazards. She can work in a moderate or quieter noise environment, or an environment that routinely allows her to wear hearing protection that reduces the noise level to moderate. She can have occasional, brief, superficial interaction.

Step four: Plaintiff can perform past relevant work as a food tester.

Step five: In the alternative, as there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR at 16-29.

---

[2] Plaintiff subsequently amended her alleged onset date to May 12, 2016. AR at 65-66.
[3] 20 C.F.R. § 416.920.
[4] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER - 2

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-7. Plaintiff appealed the final decision of the Commissioner to this Court.

### III.  LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

### IV.  DISCUSSION

**A.     The ALJ Did Not Err in Assessing Plaintiff's Subjective Testimony**

Plaintiff reported left shoulder pain in December 2016. AR at 539. Her provider

ORDER - 3

recommended home exercises and anti-inflammatory medication, and told her to follow up in one month. *Id*. at 542. In January 2017, Plaintiff followed up, reporting a decreased range of motion in the shoulder and pain in her biceps with shoulder movement, and also reported that she was not using anti-inflammatories. *Id*. at 537. She stated that she was doing home exercises for her shoulder based on prior physical therapy that she had received for similar symptoms in her right shoulder. *Id*. Her provider again recommended the use of anti-inflammatory medicine, and stated that physical therapy and/or a steroid injection would be considered in the future. *Id*.

In March 2017, Plaintiff returned to address her left shoulder pain, noting that it had not improved with the physical therapy exercises, and that pain medication improved the pain but did not increase functionality. AR at 535-36. Plantiff's provider ordered an MRI of the left shoulder. *Id*. When Plaintiff returned to the clinic in May 2017, her doctor observed from the MRI report that she had a partial rotator cuff tear, but he thought this was clinically insignificant, and that her "quite poor" range of motion was due to adhesive capsulitis. *Id*. at 531. The doctor stated that Plaintiff had tried physical therapy in the past with no improvement, and he decided to perform a steroid injection at that time. *Id*.

Plaintiff's treatment notes do not mention adhesive capsulitis again until October 2017, at which point she reported that anti-inflammatory medicine was improving her condition and she would follow up "with ortho." AR at 528. Plaintiff received more treatment after October 2017, but did not mention left shoulder issues during those appointments. *See id*. at 526-27, 654-56. There are no records to indicate that Plaintiff did follow up with an orthopedist.

The ALJ referenced Plaintiff's allegations of lifting and reaching impairments due to her shoulder impairment (AR at 23), and summarized her treatment for this condition as follows:

> In May 2017, the claimant complained of left side shoulder pain over several months. Range of motion was poor, and the claimant noted she had previously

ORDER - 4

> been treated for frozen shoulder, but that was on the right side. A pain-relief injection was done, and physical therapy was recommended for continuing relief. An [MRI] study of the shoulder showed adhesive capsulitis and a rotator cuff tear. On the other hand, the claimant's treating physician thought a rotator cuff tear was clinically insignificant. [AR at 531-34.] The undersigned also notes the claimant has not sought any physical therapy despite a recommendation that she do so. This means the injection must have worked, and the claimant's condition must be less bothersome than the claimant has asserted.

*Id*. at 24.

Plaintiff argues that the ALJ's reasons to discount Plaintiff's allegations were not clear and convincing, as required in the Ninth Circuit. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). Specifically, she argues that the ALJ's reasons to discount her allegations of shoulder limitations rely on a mischaracterization of the medical evidence, a mischaracterization of the record regarding physical therapy, and speculation regarding the efficacy of Plaintiff's steroid injection in her shoulder. (Dkt. # 10 at 11.) She also challenges the ALJ's other findings regarding her subjective testimony describing physical limitations. (Dkt. # 10 at 12-13.)

First, Plaintiff argues that the ALJ erred in focusing only on the medical evidence showing that her rotator cuff tear was clinically insignificant, while failing to acknowledge that Plaintiff's providers also diagnosed her with adhesive capsulitis. (Dkt. # 10 at 11.) The ALJ did acknowledge the adhesive capsulitis diagnosis (AR at 24), however, and included "shoulder abnormalities" as a severe impairment at step two (*id*. at 19), which suggests that the ALJ did not entirely focus on the insignificant rotator cuff tear.

Next, Plaintiff argues that the ALJ erred in finding that she had not participated in physical therapy for her left shoulder. (Dkt. # 10 at 11.) The treatment record suggests that Plaintiff had previously received physical therapy for right shoulder issues, and used the same program of home exercises on her left side after she began experiencing pain on that side. AR at 537. There are also some references (one of which is ambiguous) to Plaintiff receiving physical

ORDER - 5

1  therapy on her left shoulder. *See, e.g.*, *id*. at 531 ("[Plaintiff] is due formal physical therapy as
2  well as home exercises"), 532 (finding that Plaintiff's "[c]hronic left shoulder pain with
3  decreased range of motion not responding to conservative care including PT"), 535 (describing
4  Plaintiff's left shoulder pain as "not improving with conservative care including physical
5  therapy"). There are no physical therapy treatment notes pertaining to Plaintiff's left shoulder,
6  however. At the hearing, Plaintiff testified that she was doing "[j]ust exercises" and using pain
7  medication to treat her left shoulder problems. *Id*. at 72-73. Although the record does contain
8  some indications that Plaintiff participated in physical therapy for her left shoulder, there are no
9  notes for such treatment in the record and thus the ALJ's finding that she did not participate in
10 physical therapy is a reasonable interpretation of the record.

11       Lastly, Plaintiff argues that the ALJ "wrongly speculated" that the steroid injection
12 successfully relieved her shoulder symptoms. (Dkt. # 10 at 11.) On the contrary, the ALJ
13 reasonably found that Plaintiff's lack of subsequent treatment for her shoulder suggests that her
14 injection "worked" and that her condition was less limiting than asserted. AR at 24. The doctor
15 who performed the injection asked Plaintiff to return in 6-8 weeks for a follow-up examination,
16 but there is no evidence that Plaintiff did so or that she pursued any other course of treatment for
17 her adhesive capsulitis. *See id*. at 531. The ALJ's inference is a reasonable interpretation of the
18 record, and although it might not be the only interpretation of the record, Plaintiff has not shown
19 that the ALJ's inference is unreasonable and therefore erroneous. *See Morgan v. Comm'r of*
20 *Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to
21 more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

22       Because the Court finds that the ALJ's reasons to discount Plaintiff's allegations of
23 shoulder limitations are based on reasonable interpretations of the record, the Court affirms the

ALJ's findings in this regard.

Plaintiff goes on to argue that the ALJ erred in discounting her allegations generally because "as discussed above, [she] sought very little treatment during the relevant period." AR at 24. Indeed, the ALJ's summary of the treatment record indicates that Plaintiff sought treatment for her COPD, migraines, shoulder problems, and mental health concerns, but reported improvement with medication and/or other forms of conservative care, and did not follow through on referrals for counseling or physical therapy. *Id*. at 23-24. The ALJ cited substantial evidence supporting his finding that the frequency and degree of Plaintiff's treatment undermined her allegations of disabling limitations, and thus Plaintiff has not shown that the ALJ's finding is erroneous. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

Next, Plaintiff argues that the ALJ erred in finding her testimony about her walking abilities to be inconsistent. (Dkt. # 10 at 12-13.) The ALJ noted that Plaintiff testified in response to one of his questions that she could walk half a mile before "it starts hurting." AR at 76. In response to her attorney's questioning, Plaintiff later testified that she would need to use her inhaler if she was walking more than 10 feet and would need to stop to take 3-4 breaks to sit down on a half-mile walk. *Id*. at 81-82. The ALJ also contrasted Plaintiff's hearing testimony with her agency paperwork, where she wrote that she was able to walk "a long way." *Id*. at 24 (citing *id*. at 369). Plaintiff interprets these statements as consistent with each other (dkt. # 10 at 12), but the ALJ was not unreasonable in finding them to be inconsistent, because Plaintiff's first testimony and agency paperwork do not qualify her ability to walk in the way that her later testimony did, in describing a need for breaks and/or an inhaler in order to walk more than 10 feet.

ORDER - 7

Lastly, Plaintiff challenges the ALJ's reliance on her daily activities as a reason to discount her allegations. (Dkt. # 10 at 13.) The ALJ found that Plaintiff's reported ability to shop, do dishes, vacuum, do laundry, go places (including a movie theater), play online games, mow the lawn, sew, knit, and socialize with neighbors was inconsistent with her testimony "that reading is all she can do, and that she cooks light meals and some housework, but sometime[s] needs help." AR at 24-25 (referencing *id*. at 73-78). Plaintiff contends that the activities listed by the ALJ are consistent with her hearing testimony, but that if they are inconsistent, that can be explained by the passage of two years between the time she completed her function report and the time of her hearing. (Dkt. # 10 at 13.) Again, Plaintiff has offered a contrary interpretation of the record to argue that her function report and her hearing testimony are in fact consistent, but has not shown that the ALJ's interpretation of those statements is unreasonable. Plaintiff's function report arguably describes more functionality than she testified to at the hearing, and the ALJ did not err in finding these statements to be inconsistent or in discounting her allegations on that basis. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities may undermine credibility where they (1) contradict the claimant's testimony or (2) "meet the threshold for transferable work skills").

Because Plaintiff has not established error in the ALJ's assessment of Plaintiff's allegations, the Court affirms this portion of the ALJ's decision.

      **B.**      **The ALJ Erred in Assessing the Medical Opinion Evidence**

The record does not contain any opinion from a treating or examining source regarding the functional limitations caused by Plaintiff's physical conditions. The ALJ gave great weight to the State agency opinions regarding Plaintiff's physical functioning, and found them to be consistent with the remainder of the record, "which show[s] no significant impairment to the

claimant's back or shoulders beyond a rotator cuff tear, which the claimant's treating doctor felt to be clinically insignificant." AR at 25. The ALJ went on to find that assuming that Plaintiff's shoulder impairment (which had not been diagnosed at the time of the State agency reviews) limited Plaintiff to frequent reahing and no overhead reaching, she could still perform her past relevant work as well as the cart attendant job identified at step five and was therefore still not disabled. *Id*.

As noted by Plaintiff, the ALJ's summary of the record is inaccurate: Plaintiff was diagnosed with adhesive capsulitis in her left shoulder. *See* AR at 531. Her torn rotator cuff was indeed felt to be clinically insignificant (*id*.), but the ALJ's finding that Plaintiff had "no significant impairment" to her back or shoulders misrepresents the record. *Id*. at 25. The Commissioner does not address this discrepancy, and instead unpersuasively attempts to characterize Plaintiff's argument as merely an alternative interpretation of the evidence. (Dkt. # 11 at 11-12.) Because the ALJ misrepresented the record in finding the State agency opinions to be consistent with the more recent evidence, the ALJ's interpretation of the record is not supported by substantial evidence and must be reconsidered on remand. On remand, the ALJ should also consider whether further development of the record regarding Plaintiff's physical functioning is warranted.

## V.     CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should reconsider the State agency opinions in light of the entire record, and also consider whether further development of the record is necessary.

//

ORDER - 9

Dated this 23rd day of June, 2020.

*MJPeterson*
MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 10